**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Peter Reuben ORTIZ, Defendant-Appellant.**

**No. 466–70.**

United States Court of Appeals, Tenth Circuit.

Aug. 2, 1971.

---

Harry J. Atwell, Englewood, Colo., for defendant-appellant.

Gordon Allott, Jr., Asst. U. S. Atty., James L. Treece, U. S. Atty., and Richard J. Spelts, Asst. U. S. Atty., Denver, Colo., on the brief, for plaintiff-appellee.

Before HILL, SETH and COFFIN,* United States Circuit Judges.

HILL, Circuit Judge.

On a trial to the court, after a jury had been waived, appellant Ortiz was convicted on two counts of violating the federal drug laws. Count one charged Ortiz with manufacturing, compounding and processing a depressant or stimulant drug in violation of 21 U.S.C. § 331(q) (1); count two charged possession of a depressant or stimulant drug for sale, delivery or other disposal to another in violation of 21 U.S.C. § 331(q) (3).[1] On this direct appeal from his conviction, Ortiz primarily challenges the sufficiency of the evidence, and in addition challenges a search and seizure which produced most of the government's evidence used to convict Ortiz.

The evidence, taken in the light most favorable to the government, as we must on appeal, has its root beginning in October, 1969, when an undercover agent of the Federal Bureau of Narcotics and Dangerous Drugs came into contact with Ortiz's cohort Scott Noland. After at least one meeting and pursuant to Noland's request, the federal agent journeyed to a mountain cabin in Colorado on October 26, 1969, and there delivered to Noland a quantity of ether, phenyl-2-propanol, and several large calibrated beakers. The chemicals are precursors in the manufacture of methamphetamine, known colloquially as "meth" or "speed".

After October 26 and until November 2, 1969, the cabin was kept under constant surveillance by federal agents. No one besides Noland and Ortiz was seen at the cabin during that period. On November 1, 1969, at 3:30 a. m., Noland and Ortiz were observed through a cabin window and appeared to be passing substances from one container to another. Later that day, at 7:30 p. m., Noland was seen pouring something from one container to another while Ortiz was stirring the contents. Then at 9:45 p. m., the agent conducting the watch saw a flash of light in the cabin and what appeared to be a puff or cloud of smoke coming from the cabin.

Having seen enough, the federal agents procured a warrant to search the cabin, and at 6:45 a. m., November 2, 1969, the agents executed the warrant. One of the agents knocked at the door, identified himself, and announced that he had a search warrant. Noland and Ortiz were asleep and testified that they heard no knock. The agents testified that having obtained no immediate response at the door, they proceeded to force the door open, enter the cabin, subdue the occupants, and initiate their search.

The search produced, among other items, a glass jar containing a small quantity of dl-methamphetamine hydrochloride and a small cardboard box on the kitchen window sill which contained traces of the same chemical. The agents also found splashes of a substance on

---

* Of the First Circuit, sitting by designation.

1. Reference is to the codification of the Federal Food, Drug and Cosmetic Act of 1938 as amended in 1965 (P.L. 89–74; 79 Stat. 226) and 1968 (P.L. 90–639; 82 Stat. 1361). The 1970 amended version of the statutory prohibition is codified at 21 U.S.C. § 841. Appellant was charged and convicted under the 1968 amended law applicable in 1969.

the ceiling and walls of the living room and on the ceiling, walls, refrigerator and cupboards of the kitchen area. The substance was found to be dl-methamphetamine hydrochloride, and scrapings of the splashes were offered and received into evidence at the trial. The agent who previously had been in the cabin on October 26 testified that the splashes of the chemical had not been on the walls and ceilings at that earlier date. The agent also testified that glass calibrated beakers, tinfoil cut in strips, pH paper, and hydrochloric acid were found in the cabin. A government chemist testified that the items seized were useful in the manufacture of methamphetamine.

It also developed that while the agents were descending on the cabin to execute the search warrant, they passed an outdoor toilet behind the cabin. There were tracks leading to the outbuilding from the cabin. One agent looked in the window of the outbuilding to assure himself that there was no one in there who would jeopardize the agents' lives or mission. Upon looking in, the agent observed a glass jar containing a substance which appeared to him as methamphetamine. After a search of the cabin, a search warrant was procured for the outhouse. That search produced a gallon jar, the contents of which was 89% dl-methamphetamine suspended in a liquid solution of ether, commonly used as a final process for purifying speed. The contents of the jar weighed approximately 6½ pounds. Also found was a plastic cold pack container holding some five pounds of the same solution, 59% of which was dl-methamphetamine. Both items were admitted as evidence against Ortiz. Three empty cans of ether, empty bottles of phenyl-2-propanol, and assorted other broken bottles and materials were also found in the outbuilding, according to the testimony of the federal agents.

Ortiz moved the trial court to suppress the evidence seized in the searches for the reason that the searches were conducted illegally. After an evidentiary hearing, the motion to suppress was denied on all grounds. United States v. Ortiz, 311 F.Supp. 880 (D.C.Colo.1970). On appeal, Ortiz continues to contend that the initial search and seizure was illegal on the ground that the agents used force to gain entrance into the cabin and failed to comply with 18 U.S.C. § 3109. We will treat that issue first.

18 U.S.C. § 3109 allows a forcible entry to execute a warrant, but only after the executing officer has given notice of his authority and purpose and is refused admittance.[2] The undisputed evidence was and the trial court found that when the agents approached the cabin, one agent knocked on the door, identified himself, and announced that he had a search warrant. Furthermore, ample opportunity was given to the known occupants, Ortiz and Noland, to respond to the knocking and voluntarily admit the agents. However, no response was forthcoming, and the agents proceeded to force the door open to gain entry. Under these circumstances, the trial court concluded that § 3109 authorized the agents to use force to gain entrance into the cabin. Appellant seeks to undermine these hard facts as found by the trial court by arguing that the knocking and announcement made by the agent was merely a matter of form, not calculated to arouse the occupants. In sum, appellant views the evidence as showing that the agents did no more than perfunctorily comply with § 3109 before breaking into the cabin.

2. The phrase "refused admittance" is not restricted to an affirmative refusal. United States v. Chambers, 382 F.2d 910 (6th Cir. 1967); Masiello v. United States, 115 U.S.App.D.C. 57, 317 F.2d 121 (1963). Rarely if ever is there an affirmative refusal. More often the officers meet with silence as the occupants seek to destroy evidence or escape. Accordingly, whether the failure to respond to an officer's knock constitutes refused admittance is a question of the circumstances. See United States v. Augello, 368 F.2d 692 (3rd Cir. 1966); McClure v. United States, 332 F.2d 19 (9th Cir. 1964).

■ To substantiate his contention regarding the search, appellant looks solely to the testimony of Noland and Ortiz where both individuals said that one of the agents, whom neither could identify, told them that the raid was timed for when Noland and Ortiz would be sleeping so that the approach of the agents would go undetected. The evidence in counterweight to appellants' contention was the agents' testimony that they did not know whether the occupants of the cabin would be sleeping, and in fact on the previous morning at 3:30 a. m. the occupants were observed at work in the cabin. Moreover, at the evidentiary hearing, the trial court heard a demonstration by the agent as to how loud the knocking was, and the court was satisfied. The agent also testified that the announcement of identification and purpose was so loud in the still mountain atmosphere that he thought it would waken everybody for miles around. On this state of the evidence, we are satisfied that the trial court was correct and not clearly erroneous in finding that the conduct of the agents was lawful and in conformity with § 3109.

■ Resolving the issue of the search brings us to the question of the sufficiency of the evidence to sustain Ortiz's conviction on both counts. The standard of evidentiary review in criminal cases is well settled in this circuit. The evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, the fact finder may find the defendant guilty beyond a reasonable doubt. To be sufficient, the evidence must be substantial; that is, it must do more than raise a mere suspi-

cion of guilt.[3] A conviction cannot be based upon evidence which is consistent with both innocence and guilt.[4] Our criteria thus established, we proceed to a review of the evidence.

Regarding the manufacturing charge in count one, appellant seems to contend that proof of his guilt was arrived at only by an impermissible pyramiding of inferences from the circumstantial evidence. We find no merit in that contention.[5]

Our examination of the evidence shows that the government's evidence was basically uncontested and established three important particulars: (1) the chemicals and materials which are precursors to the manufacture of methamphetamine were delivered to the cabin; (2) a short time later Ortiz and Noland were observed several times hard at work mixing some substances; (3) shortly thereafter dl-methamphetamine was found in proximity to the cabin in two quantities of perhaps five to six pounds each. Collateral features of the evidence showed that during the short period outlined, methamphetamine somehow came to be splashed all over the living room and kitchen of the two-room cabin. Also during this time, a flash of light, presumably like a small explosion, and a cloud of smoke were seen coming from the cabin. Moreover, Ortiz and Noland were observed working round the clock, and in one instance were working at 3:30 a. m. This is hardly consistent with appellant's suggested hypothesis that the court might as easily infer they were mixing Margueritas or pancakes as infer that they were making methamphetamine. On the contrary, the evidence as outlined leaves us with no doubt that the trial judge could rightly infer and

3. *E. g.* United States v. Keine, 424 F.2d 39 (10th Cir. 1970).

4. Lewis v. United States, 420 F.2d 1089 (10th Cir. 1970); Brumbelow v. United States, 323 F.2d 703 (10th Cir. 1963). It is equally true that circumstantial evidence need not conclusively exclude every other reasonable hypothesis except guilt. United States v. Turner, 421 F.2d 252

(10th Cir. 1970); Barton v. United States, 407 F.2d 1155 (10th Cir. 1969).

5. Lest there be any doubt, even if a judgment and conviction is based solely on circumstantial evidence, it cannot be objected to on that ground alone. Myers v. United States, 415 F.2d 318 (10th Cir. 1969); see McCarty v. United States, 409 F.2d 793 (10th Cir. 1969).

find that Ortiz was manufacturing a prohibited drug.

Appellant complains particularly that the evidence did not show that Ortiz was present at the cabin at all material times, and the evidence failed to show the presence of a mercuric compound at the cabin, although such a catalytic compound is necessary for the manufacture of methamphetamine. We find no deficiency in the evidence in these respects. Taken in the best light for the government, the evidence does lead to the conclusion that Ortiz worked with Noland in the manufacture of the drug, and his presence at that critical time is enough to establish the crime charged in count one. Likewise, we find no failure in the proof just because the catalytic agent was not found on the premises when the federal officers made their search. Assuming that the compound is necessary for the manufacture of methamphetamine, the absence of the catalyst was merely part of the evidence to be weighed, and that fact could not alone negate any conclusion that Ortiz manufactured methamphetamine at the cabin. On balance, the evidence of manufacturing, together with the fact that methamphetamine was actually found on the premises, makes the absence of the catalyst seem of scant significance.

Turning now to appellant Ortiz's conviction on possession for sale, appellant believes that there is a hiatus in the evidence in several crucial respects: (1) there was no evidence linking Ortiz with the outbuilding where the two containers of methamphetamine-ether solution were found, and (2) even if Ortiz was in possession of the drug, there was no evidence tending to show that his purpose was to sell, deliver or dispose of the drug to another, as prohibited by 21 U.S. C. § 331(q) (3).

We have no problem finding the evidence to link Ortiz with the finished product found in the outhouse so that he can be said to have possessed the drug. The outbuilding where the drugs were found was the outdoor toilet of the cabin which Ortiz and Noland alone occu-

pied. The outbuilding was some 45 feet from the cabin and unquestionably was part of the premises. The setting was an isolated mountain region with apparently few inhabitants or residences in the area. During the period of days when the federal agents had the cabin under surveillance, the weather conditions were constantly cold and snowy. When the agents subsequently approached the cabin to execute the warrant, they spotted footprints in the fresh snow leading from the cabin to the outhouse where the drugs eventually were found. Moreover, traces of the same drug found in the outbuilding were also found in beakers in the cabin. Conversely, empty cans of ether and empty bottles of phenyl-2-propanol, similar to the ones delivered to the cabin, were found in the outbuilding. Surely the evidence is overwhelming that the containers of methamphetamine found in the outbuilding belonged to Noland and Ortiz. It, of course, makes no great difference which of the two hid the drugs in the outbuilding so long as we can say that they were the parties in possession when the federal agents seized the drugs.

A more difficult problem is posed in deciding whether the evidence proved the essential element of § 331(q) (3) that Ortiz possessed the drug for sale, delivery or disposal to another. There was no proof of an actual sale by Ortiz, so admittedly the sufficiency of the evidence in this respect rises or falls on whether the two containers of methamphetamine were of such quantity that it is proper to conclude that Ortiz was going to sell, deliver or dispose of the speed to another rather than keep it for himself. Case law is practically non-existent on this proposition.

█ Due consideration of the problem has left us with the firm conviction that the trial judge, upon viewing the two sizeable containers entered as exhibits, could properly conclude that the manufactured drug was of such quantity as to be probative evidence that the drugs were possessed for sale, delivery or other disposal to another. Such reasoning ap-

pears to have been persuasive to the court in an analogous situation in United States v. Cerrito, 413 F.2d 1270 (7th Cir. 1969). The legislative history of the statutory prohibition against trafficking in drugs reveals that Congress believed that the quantity of drugs found in the possession of a person should bear directly upon the question of whether or not his possession is for his own use or is for the purpose of illicit transactions involving others.[6] Moreover, the converse position in its natural extent means that the trial judge should have ignored the physical properties of the containers of drugs before him as exhibits. We are loathe to require this for, to paraphrase the trial judge in this very case, one should not be required to take leave of his senses when he ascends the bench to try a case. We hold that the quantity of the drugs found in Ortiz's possession established his purpose to sell, deliver or otherwise dispose of the drugs in contravention of the criminal statute.

Appellant argues that the trial judge could not, by merely viewing the drugs in the two bottle containers, ascertain whether there was a large quantity or a small quantity of the drugs present. Proof was that the drugs were in the form of dl-methamphetamine suspended in ether solutions in the bottles and the total contents of each bottle weighed from 5 to 6½ pounds. The government's chemist testified that by weight the methamphetamine made up 89% of the contents of the larger container and 58% of the contents of the other container. The government did not adduce evidence establishing either the relative purity of the dl-methamphetamine, or how many typical dosages of speed could be made from the total of nearly 8½ pounds of dl-methamphetamine contained in the two bottles. Had there been positive proof along those lines, undoubtedly there would have been a more powerful inference that Ortiz possessed the drugs for the purpose of disposal to another. In future cases involving a different factual situation, the presence or absence of such proof may be critical. However, in the instant case, it is clear that Ortiz possessed no small amount of speed and the total quantity was more than he would possess for his own use. Accordingly, we reiterate that in our view there was sufficient evidence of Ortiz's possession to sell, deliver or dispose of the drug to another.

Affirmed.

---

6. U.S.Code Cong. and Admin. News (1965) pp. 1899–1900; U.S.Code Cong. and Admin.News (1968) pp. 4599–4600; U.S. Code Cong. and Admin.News (1970) p. 4577.