**UNITED STATES of America,
Appellee,**

v.

**Andrew J. WELEBIR, Appellant.
No. 73–1994.**

United States Court of Appeals,
Fourth Circuit.

Argued April 2, 1974.

Decided June 6, 1974.

---

Louis Koutoulakos, Arlington, Va., for appellant.

David H. Hopkins, Asst. U. S. Atty., (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before CRAVEN, RUSSELL and ADAMS,* Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The defendant appeals from a conviction under three counts of an indictment charging (1) unlawful manufacture, (2) possession, with intent to distribute, of amphetamines, both in violation of Section 841(a)(1), 21 U.S.C. and (3) of the use of parcel post to carry on an illegal activity in violation of Section 1952, 18 U.S.C.[1] He assigns four grounds of error. We find the assignments of error without merit and affirm.

For his first claim of error, the defendant challenges the validity of the search warrant, on the basis of which the apartment of the defendant was searched and the amphetamine material, which gave rise to the prosecution, seized. The affidavit supporting the search warrant was made by an agent of the Bureau of Narcotics and Dangerous Drugs (hereafter referred to as Bureau). It began with a reference to a telephone order for certain drugs, received by a New Jersey chemical company from a person giving the name of the defendant. The drugs ordered "appeared", in the opinion of the chemical company, "to be precursors for amphetamine." For that reason, the chemical company sent a copy of the order to the Bureau for its information. The order was in turn submitted to an identified Bureau chemist, who confirmed that with "the chemicals manifested" on the

---

* United States Circuit Judge for the Third Circuit, sitting by designation.

1. The indictment contained a fourth count (i. e., the use of a telephone in facilitating manufacture of an illicit drug in violation of 21 U.S.C. § 841(a)(1)) but this count was dismissed on motion.

order for supplies "Methamphetamine (commonly called 'Speed') could be manufactured" and fixed the amount that could be manufactured therewith as "approximately one pound or 551 grams of *Pure* methamphetamine * * * even in a primitive laboratory." The materials ordered were thereafter shipped to the defendant at the address given and a controlled delivery was made by officers of the Bureau. When the delivery was made, a distinct odor of chemicals was detected by the officers making the delivery. A person identifying himself as the defendant accepted delivery. A chemist, identified in the affidavit, on the same day interviewed the Director of the Chemistry Department at American University, where the defendant was a student, and was informed that the defendant had taken numerous chemistry courses at that institution and was "capable of manufacturing illicit drugs". Finally, a Sergeant in the Special Unit, Arlington County (Virginia) Police Department, who was identified in the affidavit, told a named agent of the Bureau that "a confidential source who has provided reliable information in the past which led to three separate arrests and convictions," had reported that "Welibir was planning to open and operate a clandestine laboratory for the purpose of manufacturing illicit drugs * * *."

 The defendant argues that this detailed affidavit contained "only conclusions and hypotheses * * * without the factual foundation neces-

sary" to support the issuance of a search warrant. We do not so construe the affidavit. It is true, it may not have stated facts sufficient to convict the defendant of being engaged in the manufacture of illicit drugs, intended for sale; such is not required under the commands of the Fourth Amendment; it is sufficient that the supporting affidavit, taken as a whole, be sufficiently detailed and specific to warrant a finding of the probability of such activity. United States v. Ventresca (1965) 380 U.S. 102, 107–108, 85 S.Ct. 741, 13 L. Ed.2d 684. Such probability was established by the affidavit in this case. The defendant purchased chemicals of such a type and in such quantities that the chemical company from which he was purchasing such drugs felt called on to advise the Bureau of such purchases, which, by their very nature, were capable of being used to manufacture illicit drugs. The Bureau submitted the purchase order to one of its own expert chemists, who gave the opinion that, with the materials ordered and a few other "simple and easily obtainable chemicals", methamphetamine "could be manufactured * * * even in a primitive laboratory." [2] The officers, who made delivery to the defendant at his apartment, detected chemical odors emanating from the apartment, a circumstance indicating the operation of a chemical laboratory in the apartment. This circumstance was given added significance by the information supplied by

---

2. It is well settled that an affiant, seeking a search warrant, can base his information on information in turn supplied him, as this information, by fellow officers. United States v. Ventresca, *supra* (380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684) ; United States v. Various Gambling Devices (5th Cir. 1973) 478 F.2d 1194; United States v. Steed (9th Cir. 1972) 465 F.2d 1310, cert. denied 409 U.S. 1078, 93 S.Ct. 697, 34 L.Ed.2d 667. Similarly, hearsay, even "second hearsay", may provide a legal basis for a search warrant. Thus, in United States v. McCoy (10th Cir. 1973) 478 F.2d 176, 179, cert. denied 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62, all of the statements of the affiant, who secured the search warrant "were based on informa-

tion relayed to him by fellow FBI agents who had in turn acquired their information from others interviewed in the course of their particular investigative endeavors." In sustaining the sufficiency of the affidavit, the Court said that "when a magistrate receives an affidavit which concerns hearsay on hearsay, he need not summarily reject this double hearsay information, but is rather called on to evaluate such information as well as all other information in the affidavit in order to determine whether the informant gathered his information in a reliable way and from reliable sources." *See, also,* United States v. Wilson (7th Cir. 1973) 479 F. 2d 936, 941.

"a confidential source", whose reliability was based on prior "reliable information" which he had supplied and which had resulted in three prior convictions.[3] In fact, this "confidential source" stated that the defendant intended to set up a laboratory for the manufacture of "illicit drugs". This information, from a reliable informant, when coupled with the fact that the defendant had ordered drugs capable of such manufacture and the observation by the officers who made the controlled delivery of the operation in defendant's apartment of a chemical laboratory, clearly had the indicia of reliability. Considering all the circumstances recounted in the affidavit "in a common sense and realistic fashion", as we are required to do under the Fourth Amendment,[4] we find the affidavit sufficient to sustain the issuance of the search warrant in this case.

■ The defendant challenges, also, the sufficiency of the proof as to the counts both of manufacturing and of possession with intent to distribute. Specifically, he contends that the count charging manufacture fails since the proof established that the "experiment" was not complete and that only "a small amount of amphetamine was found." But, "[P]roof of manufacturing does not require that the drug actually was produced." United States v. Moore (6th Cir. 1971) 452 F.2d 569, 573, cert. denied 407 U.S. 910, 92 S.Ct. 2435, 32 L. Ed.2d 684, reh. denied 409 U.S. 899, 93 S.Ct. 101, 34 L.Ed.2d 158. As a matter of fact, though, the evidence for the Government was to the effect that the defendant, in his "experiment" had already manufactured a minimum of 400 doses of amphetamine and that, with the available supplies, it was possible for the defendant, had the process of manufacturing been completed, to have produced 50,000 doses. And when the officers searched the apartment, the defendant's equipment was, according to the Government's testimony, "all set up as if a chemical reaction had just been taking place," and, in the opinion of the Government's expert, "the manufacture and purification of amphetamine and methamphetamine was taking place" at the time. The Government's expert witness went further and testified that, based on his analysis of the apparatus set up on the defendant's apartment, "the chemicals that were present and the product that resulted therefrom * * * nothing else * * * could have come out of the reaction but amphetamine". It is true, the defendant's expert differed from this conclusion. But such difference of opinion presents issues for the jury, not for us. "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States (1942) 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680; United States v. Sherman (4th Cir. 1970) 421 F.2d 198, 199–200, cert. denied 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78; United States v. Grow (4th Cir. 1968) 394 F.2d 182, 201–202, cert. denied 393 U.S. 840, 89 S.Ct. 118, 21 L. Ed.2d 111. The facts in this case, measured by this standard, were sufficient to support the submission of the issue of manufacturing to the jury.

■ Equally untenable is the defendant's attack on the sufficiency of the proof of intent to distribute under the first count of the indictment. Intent is rarely susceptible of direct proof; it is generally to be inferred from the circumstances. In the case of illicit drugs, intent to distribute may in proper circumstances be inferred from the amount in possession. Whether the inference is warranted depends, of course, on the amount in possession. As

---

3. *Cf.*, United States v. Sultan (2d Cir. 1972) 463 F.2d 1066, 1068–1069:

" * * * A recitation that an unnamed informant has previously supplied accurate information is sufficient to justify reliance on the informant's story."

4. United States v. Ventresca, *supra* (380 U. S. at 108).

the Supreme Court stated in Turner v. United States (1970) 396 U.S. 398, 423, 90 S.Ct. 642, 656, 24 L.Ed.2d 610, "a small quantity", which could as well be "for his (the defendant's) personal use" as "for sale" will not support the inference; conversely, though, as *Turner*, also, held if " 'it can * * * be said with substantial assurance that the presumed fact [the intent to distribute] is more likely than not to flow from the proved fact on which it is made to depend' " (396 U.S. at pp. 404–405), the inference may be justified. Accordingly, it is a question to be determined on a case-by-case basis whether the quantity of illicit drugs in the particular case is sufficient to establish, absent any other evidence, intent to distribute. United States v. Childs (4th Cir. 1972) 463 F. 2d 390, 392, cert. denied 409 U.S. 966, 93 S.Ct. 271, 34 L.Ed.2d 232, reh. denied 409 U.S. 1131, 93 S.Ct. 934, 35 L.Ed.2d 264; United States v. Ortiz (10th Cir. 1971) 445 F.2d 1100, 1104–1105, cert. denied 404 U.S. 993, 92 S.Ct. 541, 30 L. Ed.2d 545, reaffirmed United States v. Henry (10th Cir. 1972) 468 F.2d 892, 893–894; United States v. Moore, *supra* (452 F.2d at p. 573).

We conclude that the facts in this case are adequate to support an inference, based on the quantity of illicit drugs and the nature of the defendant's operation, of intent to distribute. The defendant was not engaged in a trifling operation.[5] His experiment was not concerned with a single, small chemical batch nor with manufacture for personal use. He was working with six separate containers, containing substantial quantities of amphetamines in various stages of development. The defense that this was a mere student's casual experiment lacks plausibility. It is most unlikely that, in a student experiment, one would be converting materials out of which some 50,000 doses of amphetamine could be processed. Compounding in such quantities manifestly points towards distribution. In any event, it was for the jury to determine whether such an operation, conducted with the skill and in the scope of this one, warranted the conclusion that it was being carried on with the intent to distribute. *See* United States v. Childs, *supra* (463 F.2d at p. 392); United States v. Moore, *supra* (452 F.2d at p. 573); United States v. Ortiz, *supra* (445 F.2d at pp. 1104–1105).

The complaint of the defendant that argument of the District Attorney exceeded proper bounds rests on the reference by the latter, during his closing argument to the jury, to the defendant as a "big peddler", who was "producing an awful lot of amphetamines to put on the street". Of course, as the defendant contends, there was no direct proof that the defendant was a "big peddler" or that he intended to distribute "an awful lot of amphetamines", yet those were inferences that could be legitimately drawn from the testimony. The amount of amphetamines in process of manufacture, if the Government's estimates are taken, gave rise to an intent to distribute and from that the Government was entitled to argue that the defendant in distributing such quantities, qualified as a "big peddler".[6]

We do not conclude that the District Attorney's argument constitutes reversible error. *See*, United States v. Retolaza (4th Cir. 1968) 398 F.2d 235, cert. denied 393 U.S. 1032, 89 S.Ct. 646, 21 L.

---

5. The Government attempted to prove "the going price of amphetamine dosages on the illegal market" in order "to show that the amounts here were more than [for] personal use." The District Court refused to admit the evidence. *Cf.*, United States v. Mather (5th Cir. 1972) 465 F.2d 1035, 1037, cert. denied 409 U.S. 1085, 93 S.Ct. 685, 34 L.Ed.2d 672.

6. *Cf.*, United States v. Cohen (2d Cir. 1949) 177 F.2d 523, 526–528, cert. denied 339 U.S. 914, 70 S.Ct. 568, 94 L.Ed. 1340, where the Court, in upholding the District Attorney in his characterization of the defendant as a "pimp", stated that the conviction would be *overturned on the basis of a characterization* used by an attorney in his argument "only where the invective is so palpably improper as to have been clearly prejudicial."

Ed.2d 576; United States v. Sawyer (4th Cir. 1965) 347 F.2d 372.

 Defendant's final contention is that he could not be convicted of both manufacturing and of possession with intent to distribute, "since 'manufacture' embraces and includes possession." The two charges, however, are separate offenses, require different proof, and may support separate verdicts. *See* United States v. Moore, *supra* (452 F.2d 569) and United States v. Ortiz, *supra* (445 F.2d 1100); *cf., also,* United States v. Richardson (8th Cir. 1973) 477 F.2d 1280, 1283, cert. denied 414 U.S. 843, 94 S.Ct. 104, 38 L.Ed.2d 82; United States v. Scales (6th Cir. 1972) 464 F.2d 371, 373.

The conviction is accordingly affirmed.