## State of Vermont v. Vernon P. Roby

[360 A.2d 572]

No. 45-75

Present: **Barney, C.J., Smith, Daley, Larrow and Billings, JJ.**

Opinion Filed June 1, 1976

*John A. Howard,* Orleans County State's Attorney and *John J. Wall, Jr.* (On the Brief), Newport, for Plaintiff.

*Robert Edward West,* Defender General and *Robert M. Paolini,* Deputy Defender General, Montpelier, for Defendant.

**Daley, J.** Defendant was convicted of knowingly and unlawfully manufacturing a regulated drug in violation of 18

V.S.A. § 4224(g). The State's information alleged that on May 11, 1974, at the town of Morgan in the County of Orleans, defendant "did then and there knowingly and unlawfully manufacture a regulated drug, to wit, methamphetamine, (speed, so-called), in violation of 18 V.S.A. § 4224(g)".

By motion for judgment of acquittal made at the close of the State's case, which was renewed at the close of all of the evidence, defendant challenged the sufficiency of the evidence to warrant a conviction. These motions, as well as defendant's motion for a new trial, were denied. Defendant now raises the question of the sufficiency of the evidence by appeal.

In addition, defendant claims that the trial judge's interruption of defense counsel's closing argument compromised his right to a fair and impartial trial. However, since we reverse because of insufficient evidence, we do not decide this latter issue.

By this appeal defendant challenges the substance of the proof against him. This challenge requires us to test the evidence in its aspect most favorable to the State, free from the force of modifying evidence. See *State* v. *Fox*, 123 Vt. 82, 181 A.2d 74 (1962). So viewed, the evidence discloses the following factual situation. The State through its investigating officers and informants received information which led them to believe that a regulated drug, methamphetamine, was being made by defendant at a hunting camp. As a result of a search warrant not in issue certain laboratory apparatus and chemicals were seized. The chemicals alone were insufficient to manufacture methamphetamine; however, with the addition of a catalyst (for which an invoice was found) the drug could have been manufactured. Also found were notes which designated methamphetamine as the "target compound", a term given to an objective sought to be attained by chemical means. On the basis of this evidence, the State's expert witness testified that in his opinion defendant was "attempting to prepare to manufacture, to synthesize methamphetamine. . . ."

No methamphetamine was in fact found. During his testimony the State's expert witness testified that he had analyzed the only mixture found at the camp and determined it to be chlorobenzene and allyl chloride, a mixture which results in the synthesis of chloromethamphetamine, a nonregulated drug.

The State also introduced testimony of a witness who had moved into the camp with defendant. This witness testified that defendant had told him that the purpose of the equipment in the camp was the manufacture of methamphetamine and that, to the best of his knowledge, defendant had actually told him that he was manufacturing "speed" (methamphetamine) just prior to the search. Another witness, present at the camp during the process, testified without objection that defendant was "trying to make speed, I guess" and "I just heard that he was trying to make speed. . . ."

Having charged defendant as it did, the State assumed the burden of proving all of the essential elements of the offense. Again, taking the evidence in the light most favorable to the State, its expert concluded from the laboratory apparatus, chemicals, notes and errors in the notes, and an invoice for a catalyst, that the total process could have led to the production of methamphetamine if further steps were taken. He testified that at the time in question defendant was at the formative stage or very beginning of the total process.

The information, however, charges that defendant did manufacture a regulated drug. Since the evidence shows that the drug had not come into being and that its manufacture was impossible without the missing catalyst, we are required to hold, even in light of defendant's extra-judicial admissions, that the State failed to prove the offense charged by the required measure of proof.

Our view of the record and the State's brief leads us to believe that the State proceeded upon a theory that in prosecutions under 18 V.S.A. § 4224(g) there is no requirement that the drug actually be produced. In support of this theory it relies largely upon *United States* v. *Moore,* 452 F.2d 569 (6th Cir. 1971), *cert. denied,* 407 U.S. 910 (1972) and *United States* v. *Welebir,* 498 F.2d 346 (4th Cir. 1974). Both of these cases were prosecutions brought under statutes similar to our statute. In each case the court was called upon to review the sufficiency of the evidence to sustain the convictions and found it to be sufficient, stating that proof of manufacturing an illicit drug does not require that it actually be produced. However true this proposition may be under other factual circumstances, we do not consider it applicable under the facts presented in this appeal.

In *Moore* the court concluded that although the contents of a container could have been used to produce a number of legal products the immediate presence of instructions *and the chemicals required for the final steps of the synthesis* described therein, when coupled with the secretive manner in which the chemicals were procured and the absence of any notes supporting defendant's explanation of basic research, warranted an inference that the illegal drug was being manufactured. In *Welebir* defendant had already manufactured a minimum of 400 doses of amphetamine. And when the officers made the search, defendant's equipment was, according to the government's testimony, "all set up as if a chemical reaction had just been taking place," and, in the opinion of the government's expert, "the manufacture and purification of amphetamine and methamphetamine was taking place" at the time. The expert also testified that, based on his analysis of the apparatus set up in defendant's apartment, "the chemicals that were present and the product that resulted therefrom . . . nothing else . . . could have come out of the reaction but methamphetamine."

Here, defendant could not possibly, as alleged in the State's information, have manufactured methamphetamine because of the absence of a necessary catalyst. The evidence simply does not support the verdict.

*Judgment reversed.*