**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 20 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

CAROLYN C. WIGINTON,

　　　　Defendant - Appellant.

No. 98-6433

(D.C. No. 98-CR-92)

(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **McKAY**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-Appellant Carolyn C. Wiginton appeals her convictions for obtaining possession of morphine by fraud and for possession with intent to distribute morphine. Defendant was indicted on seven counts of knowingly and

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

intentionally obtaining possession of morphine by misrepresentation, fraud, and deception in violation of 21 U.S.C. § 843(a)(3) and on nine counts of knowingly and intentionally possessing morphine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The counts were based on incidents occurring between September 29, 1997, and March 10, 1998. Defendant was tried before a jury in the United States District Court for the Western District of Oklahoma and was found guilty on all counts. She alleges that the evidence was insufficient to support the jury's guilty verdict.

I.

Defendant was employed as a licensed practical nurse at the Veterans Administration Medical Center in Oklahoma City, Oklahoma, for over ten years. During the period between June 1997 and March 1998, Defendant generally worked the evening shift from 3:00 p.m. to midnight on Six East, the telemetry floor where cardiac patients were monitored. As part of her responsibility for patient care, she "passed" or distributed medications in accordance with doctors' orders. R., Vol. 2 at 22.

Medications at the hospital were dispensed from a medicine cart that had a computer and drawers for various medications. To dispense a narcotic drug, a nurse would enter into the computer both an access code and a verify code, pull

up the patient's name, and input the medication needed. The computer would then indicate how many units of that drug were in the cart. The verify code was unique to the user who had to change the code every ninety days. A third code, a signature code also unique to the user, was required to sign out a prescription to a patient. After entering the necessary codes and information, a nurse removed the medication from the cart and administered it to the patient or, in some cases, gave it to another nurse to administer. At the end of each shift, the narcotics on the cart were counted to ascertain whether the quantities removed matched the quantities signed out.

On March 10, 1998, the midnight narcotic count was two Percocet pills over what it should have been. The night nursing supervisor therefore ran an activity report and found that ten Percocet pills had been signed out for administration to one patient, a highly unusual dosage. As part of an internal investigation, hospital staff subsequently ran an activity report for all of the drugs on the two carts used on Six East for the period from January 1997 through March 1998. They found 222 entries for unusually high, non-therapeutic doses beginning in approximately June 1997. All but two entries were under Defendant's name. The 222 entries were recorded on approximately ninety different days. Payroll records showed that Defendant was the only person working on every shift during which the entries were made, including the shifts

when the two entries were made under other nurses' names.

During the internal investigation, hospital staff examined 162 instances where an unusual dosage of a narcotic drug was signed out for a patient. The narcotic drugs involved included Demerol, Percocet, and morphine. The investigation determined that in no instance were there doctors' orders for a narcotic drug in the amount purportedly given and that the patients' charts had no notations of the drugs being given in these quantities. Witnesses testified that the quantities signed out were sometimes so large that administration of those quantities to the patient would have been lethal. Testimony also indicated that in some instances the drugs were signed out for patients who had been previously discharged or who were never admitted.

Defendant testified at trial that she had not signed out the narcotics at issue and that she assumed that someone else must have acquired and used her codes to divert the drugs. She presented evidence that it was possible to acquire the computer codes of other nurses to gain entry to the computer narcotics program. See id., Vol. 3 at 279. Co-workers testified that she was a good nurse and that she did not appear to be under the influence of drugs while working.

II.

We address Defendant's arguments with regard to each offense separately.

-4-

We observe, however, that the standard of review is the same with respect to the jury's findings on both offenses. "[I]n reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and ask only whether taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999) (quotation omitted). "The jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts to the ultimate facts." United States v. Anderson, 189 F.3d 1201, 1205 (10th Cir. 1999) (quotation omitted).

We begin with Defendant's argument that the evidence was insufficient to support a guilty verdict for obtaining possession of morphine by fraud. Our review of the record indicates that evidence was presented from which the jury could have determined that Defendant fraudulently obtained morphine on the seven occasions charged in the indictment. In each instance, an unusually large quantity was signed out under Defendant's name despite the absence of doctors' orders for such quantities and in some cases when the named recipient was not in the hospital. According to the trial testimony, three codes had to be entered to requisition the narcotics from the medicine carts, two being unique to Defendant.

-5-

While Defendant produced evidence that it may have been possible for another individual to obtain Defendant's codes, at least one of the three codes was changed every ninety days. Based on the number of incidents, the presence of Defendant on all occasions when these incidents occurred, the length of time during which the diversions had occurred, and the number of code changes during that time, the jury could have determined that Defendant took the missing narcotics. The jury heard and evidently rejected Defendant's testimony to the contrary. "We do not . . . second-guess the jury's credibility determinations . . . . Rather, we must accept the jury's resolution of the evidence as long as it is within the bounds of reason." United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997) (quotations and citations omitted). We therefore hold that, based on the record before us, a reasonable jury could have found Defendant guilty beyond a reasonable doubt on all seven counts of obtaining morphine by fraud.

III.

We turn now to Defendant's argument that the evidence was insufficient to support a guilty verdict on the nine counts of possession of morphine with intent to distribute. Defendant argues that the government's only evidence on the issue of "intent to distribute" was the quantity of morphine diverted and the testimony that Defendant did not appear to be under the influence of drugs while working.

Defendant argues that ninety-eight milligrams of morphine could be used by one person in a week.

To prove possession with intent to distribute the government must "establish that [the defendant] knowingly possessed the drug with the specific intent to distribute it." United States v. Wood, 57 F.3d 913, 918 (10th Cir. 1995) (citations omitted). "A large quantity of the drug will support a reasonable inference that a defendant intended to distribute it." Id. The rationale for this inference is that a defendant who possesses more of a substance than usual for personal use intends to sell, deliver, or otherwise distribute it to someone else. See United States v. Powell, 982 F.2d 1422, 1430 (10th Cir. 1992); United States v. Gay, 774 F.2d 368, 372 (10th Cir. 1985); United States v. Ortiz, 445 F.2d 1100, 1105 (10th Cir. 1971).

In the instant case, counts one through nine involved quantities larger than would be expected for personal use. Counts one to three involved ninety-six milligrams of morphine diverted within nine days; counts four and five, ninety milligrams within a week; counts six and seven, ninety milligrams within four days; and counts eight and nine, seventy-two milligrams within two days. See R., Vol. 2 at 37-60. A normal hospital morphine order for pain is one to two milligrams intravenously every two to three hours. These quantities, especially when viewed in light of the testimony that these diversions were only nine among more than 200 during a ten-month time period, were sufficient to give rise to a

reasonable inference that Defendant did not possess the narcotics for personal use only.  This inference is also buttressed by testimony that Defendant did not appear to be under the influence of drugs while working and that morphine use in any amount leads to impaired functioning.  See id., Vol. 3 at 109.  Having thoroughly reviewed the record, we conclude that the evidence was sufficient for a jury to find Defendant guilty beyond a reasonable doubt on the nine counts of possession with intent to distribute.

Defendant's convictions are AFFIRMED.


Entered for the Court


Monroe G. McKay
Circuit Judge