**UNITED STATES of America,**
**Appellee,**

v.

**Chester Lewis ROBERTS, Appellant.**

**No. 8227.**

United States Court of Appeals
Fourth Circuit.

Argued April 3, 1961.

Decided Nov. 7, 1961.

---

William R. Cogar, Richmond, Va. (Court-assigned counsel), for appellant.

Harvey B. Cohen, Asst. U. S. Atty., Alexandria, Va. (Joseph S. Bambacus, U. S. Atty., Richmond, Va., on the brief), for appellee.

Before SOPER and HAYNSWORTH, Circuit Judges, and HARRY E. WATKINS, District Judge.

HAYNSWORTH, Circuit Judge.

In this collateral attack upon his conviction, this federal prisoner seeks to raise a question of the sufficiency of the indictment. While the indictment was objectionable and probably would have been held insufficient on motion made before trial, the question was not raised then and is not now open for consideration in a collateral proceeding.

The defendant was convicted upon each of two counts in an indictment which charged him with the mailing of letters containing threats of personal harm in violation of 18 U.S.C.A. § 876, particularly paragraph 3 of that Section. The first count of the indictment charged the mailing of a letter purportedly signed by the defendant, and the second count charged the mailing of another letter purportedly signed by the defendant's mother. He received a sentence of one year on the first count and five years on the second count. The one-year sentence has been served and he is now confined solely on the basis of the sentence on the second count.

In neither count of the indictment is it alleged that the defendant knew the contents of the letters, with the mailing of which he is charged. It may be that the fact of knowledge could be inferred in the first count from the allegation that the letter purported to have been signed by the defendant, but that basis of an inference of knowledge does not appear in the second count. It is true that one who mails a personal letter purportedly signed by his mother and addressed to his former wife, is likely to know the contents of the communication, so that the second count may not be wholly lacking in any basis for an inference of the fact of knowledge. However, we need not decide whether the fact of knowledge was implicit in the allegations of the second count, for we think the question cannot be raised in this proceeding.

The two letters involved were each handwritten and were posted at Roderfield, West Virginia, on the afternoon of November 10, 1959.[1] Each letter was addressed to the defendant's former wife in Orange, Virginia. The letter men-

---

1. The postmark on neither letter discloses the hour of mailing, but only the fact that the stamp was cancelled on the afternoon of November 10, 1959.

tioned in the first count was intended for one, Arthur Roberts, with whom the defendant's former wife resided, and contained threats of personal harm to him. The letter mentioned in the second count, purportedly signed by the defendant's mother, contained more extreme warnings and threats that the defendant would commit bodily harm and violence. The defendant had served prison terms for malicious woundings and similar offenses, so that the threats were not wholly empty.

The defendant entered a plea of not guilty upon each count. He was represented by an attorney of his choice and took the witness stand in his own defense. He readily admitted that he wrote and posted the letter mentioned in the first count of the indictment, explaining that he had been angered by a letter he had received from Arthur Roberts, though denying that he had any real intention of inflicting bodily harm upon him. He denied writing the letter mentioned in the second count, the more violent one, and all knowledge of it. He said that the writing resembled his mother's handwriting, though he was uncertain of it.

A handwriting expert testified positively and unequivocally that the two letters were written by the same person.

It thus appears that there was no actual question in the case of an innocent mailing. The defendant claimed that he neither wrote nor mailed the letter upon which the second count was based, but the evidence of the handwriting expert, coupled with the defendant's admission that he wrote the first letter, supported the finding that the defendant actually wrote and mailed the letter purportedly signed by his mother.

In the trial court there was no objection to the indictment on the ground that it failed to charge knowledge of the contents of the letters at the time of mailing.

There was no appeal from the conviction. Later, however, the defendant filed a motion pursuant to 28 U.S.C.A. § 2255 to set aside the sentence on the second count as illegal. This motion was based upon grounds which appear to be without merit and which have now been abandoned. After denial of the motion, he filed a notice of appeal and court-appointed counsel in this Court has sought to raise for the first time the question of the sufficiency of the indictment. Despite the fact that the question was not raised earlier in this proceeding, we have not declined to consider it on that ground, though we hold it could not properly be raised in a proceeding under § 2255.

■■ The primary offices of an indictment are to inform the defendant of the offense with which he is charged with sufficient clarity to enable him to prepare his own defense, and to permit him to plead a former conviction or acquittal in bar to a subsequent indictment for the same offense. An indictment which does not serve each of these offices is infected with such constitutional infirmity that it cannot survive collateral attack.[2] Clearly, however, the indictment serves those offices and is not vulnerable to attack on that ground. It charges every element of the offense except the defendant's knowledge at the time of mailing. The citation of the applicable statute provided a means by which the defendant could inform himself of that element of the offense if there were any doubt on that score.[3] The letter is sufficiently described and the date of its mailing is stated in the indictment, so that the judgment of conviction here is clearly available to support a plea in bar if he should be indicted again for the same offense.

■ It is contended, however, that the omission in an indictment of an essential

2. United States v. Cruikshank, 2 Otto 542, 92 U.S. 542, 23 L.Ed. 588; United States v. Simmons, 6 Otto 360, 96 U.S. 361, 24 L.Ed. 819; Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057; Bartell v. United States, 227 U.S. 427, 33 S.Ct. 383, 57 L.Ed. 583; Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L. Ed. 92.

3. As previously indicated, this was not an issue in the case as developed at the trial.

element of the offense [4] is a jurisdictional defect and that the judgment, rendered without jurisdiction, is open to collateral attack.

The argument goes too far. It does not follow from classification of the omitted allegation as an essential element of the crime that the omission is jurisdictional in the sense that the court had no power to act, its judgment is void and open to collateral attack. However we classify the defect here, it goes only to the merits.

While United States District Courts have only such jurisdiction as the Congress confers upon them, it was recognized long ago that they have the power initially to pass upon their own jurisdiction. When there was no provision for direct review of a judgment of a district court in a criminal case, a determination of its power to act, implicit in a judgment of conviction, was held to be binding and conclusive. Whether that determination was right or wrong, it was not open to collateral attack.[5]

This principle is not without limitation. If the indictment charges no wrongdoing or if it discloses on its face that the offense is one triable only in a state court, it is so deficient it cannot support a judgment. If, however, the indictment purports to charge, though defectively, a crime of a class triable in the district courts, it is enough to immunize the judgment from collateral attack.[6]

Here the indictment, charging the mailing of a threatening letter and citing 18 U.S.C.A. § 876, plainly purports to charge a violation of that statute. That statute defines a class of offenses of which the District Court had jurisdiction. There is nothing colorless in the charge of mailing a writing containing threats of bodily harm, and the proof established all of the essential elements of the crime. The failure of the indictment to charge that the mailing was "knowingly" done, was thus a defect of pleading, not an infirmity in the court's power to act. The omission went to the merits, not to the court's jurisdiction.

Chief Judge Sobeloff and Judge Boreman, the only other members of this Court at the time this case was heard and considered, have joined the other members of this panel in a request that this opinion contain an expression of the Court's concern over slovenly practices in offices of District Attorneys which come to our attention much too frequently.

4. The statute reaches only mailings done "knowingly."

5. Ex Parte Watkins, 3 Pet. 193, 28 U.S. 193, 7 L.Ed. 650; Ex Parte Parks, 3 Otto 18, 93 U.S. 18; Ex Parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L. Ed. 274; Lamar v. United States, 240 U.S. 60, 36 S.Ct. 255, 60 L.Ed. 526; Knewel v. Egan, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036. The same principle finds application in protecting civil judgments. The judgment of a district court in bankruptcy, founded upon a statute subsequently held unconstitutional, was binding and conclusive when attacked collaterally. Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329.

6. In re Coy, 127 U.S. 731, 81 S.Ct. 1263, 32 L.Ed. 274; United States v. Pridgeon, 153 U.S. 48, 14 S.Ct. 746, 38 L.Ed. 631; Goto v. Lane, 265 U.S. 393, 44 S.Ct. 525, 68 L.Ed. 1070; Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455; Aderhold v. Hugart, 5 Cir., 67 F.2d 247; Campbell v. Aderhold, 5 Cir., 67 F.2d 246; Creech v. Hudspeth, 10 Cir., 112 F.2d 603; Barnes v. Hunter, 10 Cir., 188 F.2d 86; Barnes v. United States, 8 Cir., 197 F.2d 271; Keto v. United States, 8 Cir., 189 F.2d 247. See Harris v. United States, 8 Cir., 288 F.2d 790, particularly the concurring opinion; cf. Manning v. Biddle, 8 Cir., 14 F.2d 518; Aderhold v. Schiltz, 5 Cir., 73 F.2d 381; Dawes v. Gough, 5 Cir., 170 F.2d 396. When it affirmatively appears, though outside of the indictment, that no federal crime was committed some Courts of Appeals have been less astute to shield the judgment from collateral attack. Martyn v. United States, 8 Cir., 176 F.2d 609; Marteney v. United States, 10 Cir., 216 F.2d 760; Tooisgah v. United States, 10 Cir., 186 F.2d 93; Hildebrand v. United States, 9 Cir., 261 F.2d 354; United States v. Rider, 9 Cir., 282 F.2d 476.

We hold the judgment invulnerable to collateral attack launched on the basis of the defect in the indictment, but we deplore the lax practices which needlessly occasion consideration of such questions.

It is beyond our understanding that a District Attorney would undertake to draw an indictment without having before him the statute which defines the offense, or, having the statute before him could be so careless as to omit allegations meeting the statutory definition of one of the essential elements of the crime. A defective indictment might come from a well-ordered office, but inexcusable carelessness in offices of District Attorneys is suggested by the frequency with which this court is required to consider questions of possible prejudice to defendants arising out of unexplainable defects in indictments. Such carelessness can save but little of the time of the District Attorney in the preparation of indictments, but its consequence requires the needless expenditure of much time and effort by him, by defendants and their counsel and by the courts. Here, as in most situations, much waste could be avoided by an initial exercise of reasonable care. A few moments dedicated to care would have avoided entirely this controversy.

When these questions are before this Court, the District Attorney or his Assistant at oral argument invariably disclaims personal involvement in the preparation of the defective indictment. It was drawn by someone else in the office.[7] The District Attorney, however, is responsible for the work-product of his office. It is proper and desirable for him to give his juniors training and experience in drafting indictments, but it is his duty to provide them with the guidance, counsel and supervision that are necessary to insure that their finished work is of a quality which the public has a right to expect and which should be re-

quired by a sense of professional pride. If the immediate cause of a defective indictment is the inexperience or carelessness of some junior-assistant, the defect evidences the failure of the District Attorney to properly organize and conduct the business of his office.

The Court takes this opportunity to suggest to the District Attorneys in this Circuit that they carefully review the internal practices and procedures of their offices and take such steps as may be necessary to lift the quality of their work to acceptable standards.

Affirmed.

---

7. We have no doubt as to the truth of such statements. In some instances the indictment was drawn by an inexperienced assistant who would not ordinarily be expected to carry the burden of oral argument in this Court. In other instances,

the District Attorney involved, doubtless has thought that someone other than the person immediately responsible for the deficiency could present the Government's case with less embarrassment.