UNITED STATES of America, Appellee,

v.

**David Thomas HAWKES, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Sylvia Ines HAWKES, Appellant.**

**Nos. 84–5125(L), 84–5126.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 2, 1984.

Decided Jan. 29, 1985.

James M. Cagle, Charleston, W.Va. (E. Joseph Buffa, Jr., Charleston, W.Va., on brief), for appellants.

Michael E. Winck, Asst. U.S. Atty., Charleston, W.Va. (David A. Faber, U.S. Atty., Wayne A. Rich, Jr., Asst. U.S. Atty., Charleston, W.Va., on brief), for appellee.

Before WIDENER, HALL and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

David Thomas Hawkes and Sylvia Ines Hawkes appeal their convictions by a jury under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 for unlawfully, knowingly and intentionally aiding and abetting each other in the manufacture, growing, cultivation and possession with intent to distribute of 39 Sinsemilla marijuana plants. David Hawkes asserts on appeal that, in addition to various allegations of trial error, his one-count indictment was void for duplicity necessitating its dismissal. We disagree and affirm his conviction. Sylvia Hawkes, while joining in her husband David's various grounds of appeal, asserts in addition that the district court's instruction to the jury regarding "intentional flight" was improper and constitutes reversible error. Finding merit in this argument, we reverse Sylvia Hawkes' conviction and remand her case to the district court for a new trial.

I.

On the afternoon of August 30, 1983, several officers of the West Virginia State Police force, acting on reliable information, commenced an aerial surveillance operation over Monroe County, West Virginia in order to locate and seize marijuana fields suspected of being cultivated in that area. Shortly after 2:00 p.m., the officers observed from the air marijuana plants growing in a cornfield on the Hawkes' farm. As the officers prepared to land their helicopter in order to investigate, they observed a

red truck exiting the Hawkes' farm at a high rate of speed. Two individuals got out of the truck and ran in the direction of the Hawkes' farmhouse. At trial, however, none of the officers were able to identify either of these individuals.

Immediately after the helicopter landed at the farm, David Hawkes surrendered to the officers. They then placed him under arrest and fully advised him of his Miranda rights. Thereupon David took the officers to the marijuana field and explained to them the details of his Sinsemilla marijuana cultivation operation. Afterwards, he took the officers into the house to retrieve the alarm system he had installed to protect the marijuana field and then came back outside, faced the steep, wooded hillside behind the house, and called out in a loud voice "Sylvia" several times. These shouts brought no response. Soon thereafter, David was taken to the police station. Subsequently both he and Sylvia were indicted, tried and convicted.

## II.

### DAVID HAWKES

■ David Hawkes asserts that because his one-count indictment included both the 21 U.S.C. § 841(a)(1) offense of knowingly or intentionally manufacturing a controlled substance and the offense in that same section of knowingly or intentionally possessing with intent to distribute a controlled substance, the indictment is duplicitous and must be dismissed.[1] We disagree.

Duplicity is defined as "the joining in a single count of two or more distinct and separate offenses." 1 C. Wright, *Federal Practice and Procedure* § 142, at 469 (2d ed. 1982). David argues that this indictment was duplicitous and that he was prejudiced thereby insofar as he could not discern upon which charge he was actually convicted. As a general rule, however, "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970). Moreover, this Court and others have held that under 28 U.S.C. § 841(a) Congress did not intend "to increase the maximum sentence when two violations of the same subsection of the statute are shown by a single act."[2] *United States v. Atkinson*, 512 F.2d 1235, 1240 (4th Cir.1975); *see also United States v. Stevens*, 521 F.2d 334, 336–37 (6th Cir. 1975); *United States v. Orzechowski*, 547 F.2d 978, 986 (7th Cir.1976), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). Accordingly, it follows that "to join possession and distribution [or in this case manufacture and possession] in one count may not be duplicitous." *Orzechowski*, 547 F.2d at 986; *United States v. Viserto*, 596 F.2d 531, 538–39 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979); *United States v. Herbert*, 502 F.2d 890, 893–94 (10th Cir.1974), *cert. denied*, 420

---

**1.** The Hawkes' one-count indictment reads as follows:

The Grand Jury Charges:

On or about August 30, 1983, near Raines Corner, Monroe County, West Virginia, and within the Southern District of West Virginia, David Thomas Hawkes and Sylvia Ines Hawkes, the defendants, aided and abetted by each other, did unlawfully, knowingly, intentionally and without authority manufacture, by growing and cultivating, and possess with intent to distribute a quantity of marihuana, that is, approximately thirty-nine (39) Sinsemilla marihuana plants, ranging in approximate height between eight and sixteen feet, a Schedule I non-narcotic drug controlled substance, as designated by Title 21, Code of

Federal Regulations, Section 1308.11(d)(13); in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

A True Bill

**2.** 21 U.S.C. § 841 (1981) provides in relevant part:

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense a counterfeit substance ...

U.S. 931, 95 S.Ct. 1134, 43 L.Ed.2d 403 (1975).

As David points out, however, this court has also remarked that where separate evidence is required to prove two charges arising from the same factual situation such charges "are separate offenses, require different proof, and may support separate verdicts." *United States v. Welebir,* 498 F.2d 346, 352 (4th Cir.1974). In *Welebir,* however, there was separate evidence available to prove the charges of possession and manufacture. In this case, the cultivation itself necessarily constituted the possession and manufacture of the marijuana—there was no separate evidence offered to prove each charge. In other words, a single act was not proof of the two offenses in *Welebir,* whereas in this case and in *Atkinson,* the same act proved the separate charges. As a consequence, the indictment in this case was not duplicitous.

In addition, David has alleged several trial errors which he asserts necessitate a reversal of his conviction. Specifically, he argues that the government's destruction of evidence, statements in the government counsel's closing argument and the district court's aiding and abetting instruction were all improper. Without discussing each allegation of error in detail, we conclude after having carefully reviewed the record and the briefs that none of these asserted trial errors are sufficiently meritorious to warrant reversal. Accordingly, David Hawkes' conviction is affirmed.

## III.

## SYLVIA HAWKES

■ Sylvia Hawkes asserts the same arguments on appeal as does David and for the foregoing reasons is also denied relief on those grounds. However, she also argues that the trial court's instruction to the jury regarding "intentional flight" was improper and necessitates a reversal of her conviction. We agree.

There are only three strands of evidence in the record to suggest that Sylvia Hawkes fled the scene of this crime. First, the airborne police officers testified that they saw two people run from a red pick-up truck toward the Hawkes' farmhouse just minutes prior to the landing of the police helicopter at the farm. Although the police officers were unable to identify either runner as Sylvia Hawkes and despite the absence of any testimony by the arresting officers that they had seen Sylvia Hawkes at any time on the day of the raid, the district court still determined that the officers' testimony constituted evidence of intentional flight by Sylvia Hawkes. We disagree. Simply put, the evidence offered by these police officers showed only that Sylvia was not present at the farm at the hour of the raid, not that she had intentionally fled the scene of the crime.

Second, government witness Colebrook, a day laborer at the farm, testified that on the day of the raid he had seen Sylvia in the farmhouse but that she was not present when the police arrived one hour later. This testimony was construed as evidence of flight. Again, all this evidence tends to show is that Sylvia was not at the farm at the time of the raid, not that she had intentionally fled the scene of the crime. There is no direct evidence to indicate that Sylvia was at the farm and subsequently fled to avoid capture and arrest by the police.

Finally, the government urged at trial that David's cries of "Sylvia, Sylvia" into the wooded hillside behind the house gave rise to a reasonable inference that Sylvia had fled into those woods. However, the trial court, in order to avoid the improper admission of hearsay testimony, specifically limited the use of this testimony to show only that the statements were made. It ruled that they could not be introduced for the truth of the matter asserted. Since the statements could not be used by the jury to prove that Sylvia was in the woods, i.e. the truth of the matter asserted, they could not serve as the basis for the jury instruction

on intentional flight.[3] As a result, the unwarranted inferences discussed above constitute the sole "evidentiary" support for the trial court's instruction to the jury.

■ This court has previously admonished the government that "[i]f [it] wishes to offer evidence of flight to demonstrate guilt, it must ensure that each link in the chain of inferences leading to that conclusion is sturdily supported." *United States v. Beahm*, 664 F.2d 414, 420 (4th Cir.1981). *Accord United States v. Foutz*, 540 F.2d 733, 740 (4th Cir.1976) ("the inference that one who flees from the law is motivated by consciousness of guilt is weak at best...."). It is clear that the trial court's instruction to the jury regarding intentional flight in this case was not adequately supported by the evidence in the record and constitutes reversible error. The prejudice to a defendant from such an instruction is obvious. Consequently, we reverse Sylvia Hawkes' conviction and remand her case for a new trial.

### IV.

For the foregoing reasons, the conviction of David Hawkes is affirmed. The conviction of Sylvia Hawkes is reversed, and her case is remanded for a new trial.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

K.K. HALL, Circuit Judge, concurring in part and dissenting in part:

I concur in that portion of the majority opinion which affirms the conviction of David Hawkes. I cannot agree, however, with the majority's conclusion to reverse Sylvia Hawkes' conviction. Unlike the majority, I believe there is ample evidence in the record regarding Sylvia's behavior at the time of the raid which, when viewed, as required, in the light most favorable to the government, supports the trial court's jury instruction that intentional flight might be

considered as reflecting consciousness of guilt.

The trial court instructed the jury in pertinent part that:

[T]he intentional flight of a defendant immediately after the commission of a crime, or at the time criminal conduct is discovered, is not sufficient in itself to establish that defendant's guilt, but is a fact which, if proved, may be considered by the jury in the light of all other evidence in the case, in determining guilt or innocence. Whether or not evidence of flight or concealment—I should say flight because that's all that is involved here—whether or not evidence of flight shows a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury.

In your consideration of the evidence of flight, you should consider that there may be reasons for that which are fully consistent with innocence. Those may include fear of being apprehended, unwillingness to confront the police, or reluctance to appear as a witness. Let me suggest also that a feeling of guilt does not necessarily reflect actual guilt.

In my view, this instruction was fair and proper in light of all of the evidence.

As the majority points out, one of the government's witnesses, Theodore Colebrook, who was a close friend of both defendants for eight years, testified that Sylvia was present in the farmhouse on the day of the raid; however, the majority neglects to mention other significant aspects of Colebrook's testimony. Colebrook stated that, other than himself, the only persons he knew to be present on defendants' property on August 30, 1983, before the arrival of law enforcement agents, were David, Sylvia, and another individual, Drew Lawrence. Colebrook further testified that on three separate occasions that day he had

---

**3.** It should be noted that since the only proper purpose for introducing these statements by David Hawkes is to show merely that they were made, the statements might not be considered probative of any fact of consequence to the determination of these prosecutions. As such, the statements may be deemed irrelevant and therefore inadmissible under Rule 402 of the Federal Rules of Evidence.

observed a helicopter flying over defendants' property and that the second time he saw the helicopter he had a conversation with David in the presence of Sylvia and Lawrence. According to Colebrook, "[h]e [David] asked me if I thought that they had seen anything." Colebrook also explained that he understood "they" to mean the helicopter and "anything" to mean the marijuana. According to Colebrook, "within a moment of that conversation," Sylvia asked him if he "thought that they were crazy for doing that." Colebrook stated that he understood Sylvia to be referring to growing marijuana.

The record also reveals that as the helicopter flew over defendants' property, State Troopers Charles Hatten and William Coburn observed a red pickup truck being driven at a rapid rate and exiting defendants' property from the rear area of the cornfield where the marijuana was being grown. According to their testimony, the troopers lost sight of the truck under a canopy of trees, but saw two people leaving the truck and running up a path toward defendants' house. The officers stated that they then observed the truck leaving the property along a public highway. Colebrook testified that he had seen Lawrence driving a red pickup truck during August, 1983. Finally, Trooper Hatten testified that, following David's surrender, David several times called "Sylvia" very loudly into the steep wooded hillside behind their house.*

In light of this evidence it was entirely reasonable for the jury to infer that, as the helicopter flew over defendants' property just before landing, Lawrence left the property in his red pickup truck; David and Sylvia had been in the red pickup truck as it traveled at a rapid rate from the rear end of defendants' cornfield towards the house; David and Sylvia were the two individuals seen running from the truck towards their house; and David ran to the house and

then back to meet the law enforcement agents while Sylvia fled. Under these circumstances, I can only conclude that the trial court's carefully worded flight instruction was both warranted and proper. I would, accordingly, affirm the convictions of both defendants.

---

* As the majority correctly notes, the trial court ruled that David's statements could not be used to prove that Sylvia was in fact in the woods. I disagree, however, with the majority's conclusion in note 3 of its opinion that these statements "might not be considered probative of any fact of consequence to the determination of these prosecutions." In my view, it was entirely proper for the jury to consider the statements as evidence of flight.