UNITED STATES of America

v.

**Jeffrey A. PLEASANT.**

**No. Crim. 3:00CR71.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 18, 2000.

David Lassiter, Special Assistant United States Attorney, United States Attorney's Office, Richmond, VA, for United States.

Charles M. Allen, Jr., Goodman, West & Filetti, Glen Allen, VA, for Pleasant.

## MEMORANDUM OPINION

PAYNE, District Judge.

This matter is ripe for decision on the issue whether the Indictment is, in part, duplicitous. For the reasons set forth below, it is. This Memorandum Opinion records the decision made on November 7, 2000.

### STATEMENT OF FACTS

On February 25, 2000, the grand jury indicted Jeffrey Pleasant on five counts, each of which arose out of alleged armed robberies. Counts One and Three charged separate incidents, both occurring on January 24, 2000, of interfering with commerce by violence, specifically armed robbery. In relevant part, Counts Two and Four of the Indictment each allege that Pleasant "during, in relation to, and in furtherance of a crime of violence, did knowingly and unlawfully carry and pos-

sess a firearm." Count Five charged possession of a firearm by a felon.[1]

Concerned that the text of Counts Two and Four charged two different offenses, or perhaps none at all, and after consulting with counsel in open court, the court required the United States to show cause why those counts should not be dismissed. The show cause hearing was held on October 11, 2000, but was continued to November 7, 2000 to allow the parties to brief the issue more fully. The United States asserted that the counts were not duplicitous. Pleasant sought dismissal on the grounds of duplicity and multiplicity.

The duplicity issue presented here turns on the meaning of the statute allegedly violated by Pleasant, 18 U.S.C. § 924(c)(1)(A). It provides in relevant part:

... any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime ... be sentenced to a term of imprisonment of not less than 5 years....

18 U.S.C. § 924(c)(1) (West 2000). The statutory text proscribes and punishes two kinds of conduct: (1) using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime; and (2) possessing a firearm in furtherance of any such crime. The Indictment against Pleasant, however, alleges that the proscribed activity consists of an amalgam of conduct taken from different segments of the stat-

ute. In particular, Counts Two and Four, which are identical, allege:

> THE GRAND JURY FURTHER CHARGES that on or about January 24, 2000, in the Eastern District of Virginia and within the jurisdiction of this Court, Jeffrey A. Pleasants [sic], *during, in relation to, and in furtherance of a crime of violence, did knowingly and unlawfully carry and possess a firearm*, to wit: a Colt .357 caliber revolver, serial number KS4107A. (In violation of Title 18 United States Code, Section 924(c)).

(emphasis added).

## DISCUSSION

For the reasons set forth below, Counts Two and Four are defective because they are duplicitous, and because they fail to charge the necessary elements of either crime proscribed by the statute. Accordingly, Counts Two and Four of the Indictment are dismissed.

### I. Duplicity

■■■ Duplicity is "the joining in a single count of two or more distinct and separate offenses." *United States v. Hawkes,* 753 F.2d 355, 357 (4th Cir.1985) (citing 1 Wright, *Federal Practice and Procedure* § 142 (2d ed.1982)). "The risk behind a duplicitous charge is that a jury may convict the defendant without unanimous agreement on a particular offense." *United States v. Moore,* 184 F.3d 790, 793 (8th Cir.1999), *cert. denied* 528 U.S. 1161, 120 S.Ct. 1174, 145 L.Ed.2d 1083 (2000). Duplicity can result in "improper notice of the charges against [the defendant], prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and ... the danger that a conviction will result from a less than unanimous verdict as to each separate offense." *United States v.*

1. On November 9, 2000, the United States filed a Superseding Indictment which mirrors the Indictment, except that it charges in separate counts carrying a firearm during and in relation to a crime of violence and possessing a firearm in furtherance of such crime, respectively, as to each charge of interfering with commerce by violence (robbery).

*Armstrong,* 974 F.Supp. 528, 539 (E.D.Va. 1997) (quoting *United States v. Duncan,* 850 F.2d 1104, 1108 n. 8 (6th Cir.1988)). A count is not duplicitous, however, merely because it alleges alternative means of completing a single offense. *See* Fed. R.Crim.P. Rule 7(c); *Armstrong,* 974 F.Supp. at 539. Where an indictment or information contains a duplicitous count, the proper remedy is to dismiss the count or to require the United States to elect which offense it desires to pursue. *See United States v. Hall,* No. 3:95CR–01, 11 (E.D.N.C. Dec. 6, 1995).

The point of embarkation for a duplicity analysis is the text of the statute at issue. *See Richardson v. United States,* 526 U.S. 813, 818, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999); *Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Examination of the statutory text includes an assessment of the words in the statute and the placement and purpose of those words in the overall statutory scheme, because "[t]he meaning of statutory language, plain or not, depends on context." *Id.* (internal quotations omitted).

■ The words of the statute are rather simple and straightforward. They proscribe two different kinds of conduct.

First, they state that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm . . . shall" receive a certain penalty in addition to the one imposed for the crime of violence or the drug trafficking crime. This part of the statute proscribes carrying or using a firearm at a certain time ("during") and in a certain role ("in relation to") in respect to other criminal conduct (drug trafficking crimes or crimes of violence).

Second, the words state that "any person who . . . in furtherance of any such crime, possesses a firearm" shall receive the same penalty. This part of the statute thus prohibits possession, a concept far different than carrying or use, in a certain

role, ("in furtherance of"), in respect to certain other activity (drug trafficking or crimes of violence).

Given their plain meaning, the words of § 924(c) delineate two quite different, albeit related, proscriptions. In so doing, the statute defines two different crimes. Nor does the context of § 924(c)(1)(A) counsel a reading at variance with the plain statutory text.

■ Thusly examined, the statutory text, assessed in context, articulates two different kinds of offenses that, in this Indictment, are charged in a single count in both Count Two and Count Four. Those two counts, therefore, are duplicitous.

## II. The Alternative Means Argument

The United States seeks to avoid dismissal, or the alternative remedy of election, by arguing that § 924(c)(1)(A) does not proscribe two separate crimes, but, instead, identifies two alternative means of committing the same offense. According to this argument, § 924(c)(1)(A) proscribes but one broad form of conduct: "employment of firearms in relation to crimes of violence and drug trafficking crimes. Congress identified various means through which *the offense* could occur." (Government's Reply Brief, p. 3).

Finding no real direction in the decisions of this circuit respecting how to structure the examination of the statute as an alternative means enactment, it has been necessary to turn to decisions from other jurisdictions for assistance in determining whether § 924(c)(1) sets out alternative means of committing a single offense or separate offenses that must be charged separately. That survey of the law in other circuits teaches that the relevant considerations are: (1) the text of the statute; (2) the legislative history; (3) the proof necessary to support each offense or means; and (4) the nature of the proscribed conduct.[2]

---

**2.** *See United States v. Edmonds,* 80 F.3d 810 (3d Cir.1996) (considering: (1) language of

As illustrated by many of those decisions, the issue which must be confronted here is presented most often, not in determining the issue of duplicity of an indictment, but in ascertaining whether a statute creates separate offenses such that a jury must unanimously agree upon the facts of each offense. That analysis parallels the duplicity inquiry. *See Correa–Ventura*, 6 F.3d at 1081 ("[jury] unanimity is closely related to the issue of duplicity.... The jury should not be permitted to evaluate separate and distinct offenses about which they may disagree in rendering a patchwork guilty verdict," though the analysis is not identical because the duplicity inquiry should occur pre trial).[3] Hence, decisions on that closely related issue significantly inform the duplicity issue presented here.

### 1. The Statutory Text

As explained above, the plain language of § 924(c)(1)(A), viewed in the context of

the federal statutory scheme proscribing conduct related to firearms, points rather clearly to the conclusion that the statute does not merely identify alternative means for committing a single offense. Yet, the United States has eschewed a plain language examination of § 924(c)(1)(A), relying instead on a structural approach which it claims is necessitated by *United States v. Hawkes*, 753 F.2d 355, 357 (4th Cir. 1985).

To begin, *Hawkes* does not place a heavy emphasis on structure; but, to the extent that it focuses on structure, *Hawkes* is correctly cited by the United States for the proposition that the fact that the statute articulates the proscribed actions in the disjunctive does not dictate the conclusion that the legislature intended to create separate crimes. *See Hawkes*, 753 F.2d at 357–58 (holding that it was not duplicitous to charge both manufacture and possession

---

the statute; (2) legislative history; and (3) background interpretive principles), *cert. denied* 519 U.S. 927, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996); *United States v. Correa–Ventura*, 6 F.3d 1070 (5th Cir.1993) (considering: (1) wording of the statute; (2) legislative history; (3) interpretive case law; and (4) particulars of the "instant case"); *United States v. Holley*, 942 F.2d 916, 928 (5th Cir.1991) (considering only whether identical evidence will support each offense), *cert. denied* 510 U.S. 821, 114 S.Ct. 77, 126 L.Ed.2d 45 (1993); *United States v. UCO Oil*, 546 F.2d 833, 835–37 (1976) (considering: (1) the language of the statute; (2) legislative history; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment), *cert. denied* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977); 1 Charles A. Wright, *Federal Practice and Procedure*, § 142 (test announced most often in the cases is that offenses are separate if each requires proof of an additional fact that the other does not).

**3.** *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), provides added context to the present inquiry, but does not directly control the ultimate outcome. In that case, a plurality of the Supreme Court upheld a capital murder conviction based on an Arizona law punishing first degree murder as premeditated murder *or* felony murder. The defendant argued that the jury must unani-

mously agree on the requisite *mens rea* for first degree murder (*i.e.* it must agree as to whether the murder was committed in the commission of a felony or it must agree that the murder was premeditated). *Schad* did not address whether the Arizona statute identifies separate offenses or alternative means to commit a single offense. Indeed, the Supreme Court accepted the determination of the Supreme Court of Arizona that:

> In Arizona, first degree murder is only one crime regardless whether it occurs as a premeditated murder or a felony murder. Although a defendant is entitled to a unanimous jury verdict on whether the criminal act charged has been committed, the defendant is not entitled to a unanimous verdict on the precise manner in which the act was committed.

*Schad*, 501 U.S. at 629, 111 S.Ct. 2491 (quoting 163 Ariz. 411, 417, 788 P.2d 1162, 1168 (1989)). In *Schad*, the Supreme Court addressed only the permissible constitutional limits of the State Court's interpretation. *See id.*, 502 U.S. at 637, 112 S.Ct. 841 ("The issue in this case therefore is not whether 'the State must be held to its choice,' for the Arizona Supreme Court has authoritatively determined that the State has chosen not to treat premeditation and the commission of a felony as independent elements of the crime, but rather whether Arizona's choice is constitutional.") (internal citations omitted).

with intent to distribute under 21 U.S.C. § 841, which makes it unlawful "manufacture, distribute or dispense *or* possess with an intent to manufacture, distribute, or dispense, a controlled substance") (emphasis added). The structure of § 924(c)(1), however, is markedly different than the statute considered in *Hawkes*. Not only does the statute list the prohibited actions in the disjunctive, but it separates the prohibited acts into separate dependent clauses with different modifiers.

Sorting out the structure of the sentence helps to shed further light upon the meaning of the statutory text. The subject of the sentence at issue is "any person." The term "who" is a relative pronoun within the first dependent clause. The prepositional phrase "during and in relation to" modifies the relative pronoun; "uses or carries" are the compound verbs; and "firearm" is the direct object.

Rather than adding a second modifier to the first relative pronoun, (i.e. "any person who, during and in relation to any crime of violence or drug trafficking crime . . ., uses or carries a firearm, or in furtherance of any such crime, possesses a firearm"), the statute begins a second dependent clause with the second relative pronoun "who." This second pronoun is then modified by the separate phrase "in furtherance of any such crime." The verb in the second dependent clause is "possesses" and the direct object is again a "firearm."

The use of a second relative pronoun, the presence of a second dependent clause and the choice of different modifiers for the prohibited conduct confirm that the second prohibited act is quite distinct from the first. In the first clause, the use or carriage of the firearm must be "during and in relation to" the predicate crime, while, in the second clause, the possession of the firearm must be "in furtherance of such crime." The proof needed to show using or carrying a firearm during and in

relation to the predicate crime is very different from the proof that one possessed a firearm in furtherance of the predicate crime. As discussed below, the significance of different modifiers is made evident in both the legislative history and the proof necessary to support conviction.

Of course, the text, the structure and the context of § 924(c)(1)(A) in the statute as a whole rather unambiguously demonstrates that the statute creates separate offenses.[4] If, however, it can be said that is not unambiguously clear on the face of the statute, the legislative history of § 924(c)(1)(A) would eliminate any perceived ambiguity.

## 2. Legislative History

In analyzing the legislative history of the statute, it is necessary to heed *Schad* 's warning that "[d]ecisions about what facts are . . . necessary to constitute the crime and therefore must be proven individually, and what facts are mere means, represent value choices more appropriately made in the first instance by a legislature than by a court." 501 U.S. at 638, 111 S.Ct. 2491, 115 L.Ed.2d 555 (internal citations and quotations omitted). Nonetheless, where, as here, the legislative history evinces a clear Congressional purpose, the ascertainment of legislative intent serves not to make a legislative choice, but to follow the choice made by the legislature.

### a. Pre–Amendment Decisions

Congress added the part of the statute that proscribes and punishes the possession of a firearm "in furtherance of" a predicate crime on November 13, 1998. Before that time, the statute proscribed and punished only "[w]hoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." 18 U.S.C. § 924(c) (1997). The United States argues that decisions con-

---

4.  *But see UCO Oil,* 546 F.2d at 836 ("On the face of it, the statute, framed in a single paragraph and providing a single penalty, does not suggest a Congressional purpose to create more than one offense").

struing the statute before it was amended should influence the decision today. Specifically, the United States places heavy reliance upon *Correa–Ventura,* 6 F.3d 1070, and *United States v. Range,* 94 F.3d 614 (11th Cir.1996). In *Correa–Ventura,* the court concluded that "mere carrying or use of a firearm is not the criminal *actus reus* proscribed—rather it is the employment of the weapon in the context of another predefined crime." 6 F.3d at 1083. Therefore, said the court, jury unanimity as to the particular firearm that was employed was not required. *See id.* The Eleventh Circuit, in *Range,* expanded *Correa–Ventura* by not requiring jury unanimity with respect to the use and carry elements. *See* 94 F.3d at 619. From those decisions, the United States extrapolates that using or carrying *or possessing* a firearm in the context of § 924(c) must be an alternative basis for committing a single offense—the employment of a weapon in the context of another pre-defined crime.

As an initial matter, the argument is of little force because the court, in *Correa–Ventura,* did not address the question presented here. Indeed, the Court of Appeals specifically stated, "This case ... does not present an election between statutory means; instead, the issue is one of pure unanimity. We are not faced with statutory alternatives to meeting a given element of a 924(c) offense, but rather whether the firearm component of the crime requires factual concurrence." 6 F.3d at 1080.

To the extent that *Correa–Ventura* and *Range* are construed to have decided that use or carriage of a firearm are alternate means of violating pre-amendment § 924(c), that simply is beside the point in today's case, which poses the far different question whether possession of a firearm in furtherance of a predicate crime and use or carriage of a firearm during and in relation to such a crime are separate offenses. It does not follow at all that, because the two verbs (use and carry) proscribe alternate means for violating the

pre-amendment statute that those actions, and the proscribed act of possession, have the same effect after Congress added a materially different kind of proscribed conduct when it amended the statute in 1998. That is especially true when one recalls that the amendment was made after the Supreme Court had said that use and carry are not inclusive of possession in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

Moreover, *Bailey* makes clear that the fundamental decisional precept of *Correa–Ventura* and *Range*—that the "*actus reus*" pre-amendment § 924(c) is "the employment of the weapon"—although true for use and, perhaps even carry, is not true for possession. *Bailey v. United States,* 516 U.S. at 144, 116 S.Ct. 501 ("the obvious congressional intent [was] to require more than mere possession to trigger the statute's application"). Thus, the notion that employment of a weapon includes possession—the linchpin of the alternate means interpretation urged by the United States—cannot be reconciled with the reasoning on which *Bailey* was decided. Accordingly, in *Bailey* 's wake, the first clause of § 924(c) concerns itself with alternate means of employment of the weapon, the second clause does not. This, in turn, forecloses the argument that "possession in furtherance of" is an alternative means to "use or carry during and in relation to."

### b. The Effect Of *United States v. Bailey*

As explained above, in *Bailey,* the Supreme Court limited the range of activity proscribed and punished by pre-amendment § 924(c). Before *Bailey,* several circuits had upheld convictions under the "use" term of the statute without proof that the firearm was somehow actively used during the predicate crime. *See id.,* 516 U.S. at 142, 116 S.Ct. 501 (collecting cases). *Bailey* overruled those decisions by requiring proof that the defendant actively employed the firearm in order sus-

tain a conviction for "use" of a firearm. *See id.,* 516 U.S. at 143, 116 S.Ct. 501.

In *Bailey,* the Court centered its decision in large part on Congress' choice of words and its failure use the broader term of "possession":

> "[U]se" must connote more than mere possession of a firearm by a person who commits a drug offense. Had Congress intended possession alone to trigger liability under § 924(c)(1), it easily could have so provided. This obvious conclusion is supported by the frequent use of the term "possess" in the gun-crime statutes to describe prohibited gun-related conduct.

516 U.S. at 143, 116 S.Ct. 501 (internal citations omitted). "If Congress had intended to deprive 'use' of its active connotations, it could have simply substituted a more appropriate term—'possession'—to cover the conduct it wished to reach." *Bailey,* 516 U.S. at 148, 116 S.Ct. 501.

### c. The Post-*Bailey* Amendment

Congressional reaction to *Bailey* 's invitation ensued quickly. In 1996, both the House of Representatives and the Senate entertained bills to criminalize the possession of a firearm within the context of § 924(c)(1).[5] Neither bill was enacted at that time. Congress again addressed *Bailey* and its limitations in the 105th Congress. The original Senate bill, S.191 105th Cong. (1st Sess.1997), merely added

"possesses" to the series of prohibited actions.[6] *See Criminal Use of Guns, Hearing Before the Committee on the Judiciary of the United States Senate,* 105th Cong. 57–58 (1997). The House Bill, H.R.424, 105th Cong. (1st Sess.1997), added the "in furtherance of" language to possession, but omitted "uses or carries":

> A person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States—
>
> > (A) possesses a firearm in furtherance of the crime, shall, in addition to the sentence imposed for the crime of violence or drug trafficking crime, be sentenced to imprisonment for 10 years; . . .

The ultimate legislation reflected a combination of the differing approaches. The final version (and the current statute) retained the "uses or carries." "during and in relation to" language and added "possession" "in furtherance of." *See* 144 Cong. Rec. S12671 (daily ed. Oct. 16, 1998) (statement of Sen. DeWine).

The discussions in both the Senate hearing on S.191 and the House Committee Report on H.R.424 reflect that Congress

---

**5.** The Senate Bill, S.1612, 104th Cong. (2d. Sess.1996), sought to amend the statute by merely striking the words "uses or carries" and inserting "possesses."

The House Bill, H.R.125, 104th Cong. (2d Sess.1996), also sought to replace "uses or carries" with "possesses," but set up a slightly different scheme:

A person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States—

(A) possesses a firearm, shall, in addition to the sentence imposed for the crime of

violence or drug trafficking crime, be sentenced to imprisonment for 5 years. . . .

**6.** The bill text originally stated:

any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses, carries or possesses a firearm shall, in addition to the punishment provided for such a crime of violence or drug trafficking crime—

(i) be sentenced to a term imprisonment of not less than 5 years. . . .

was intimately aware of the decision in *Bailey* and sought to avoid its restrictive effects. *See* H.R.Rep. No. 105–344, at 4–6 (1997) (noting that the *Bailey* decision has had a significant impact on federal drug and violent crime prosecutions); *See Criminal Use of Guns, Hearing Before the Committee on the Judiciary of the United States Senate,* 105th Cong. 57–58 (1997) (statement of Rep. Helms) ("Congress is morally obliged to correct the latest blunder by the Supreme Court").

Moreover, Congress was aware that "in furtherance of" created a different standard of conduct than did the "during and in relation to" language. In the House Committee Report, the Committee stated that " 'in furtherance of' is a slightly higher standard and encompasses the 'during and in relation to' language." H.R.Rep. No. 105–344, at 11 (1997). "The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense." *Id.* 12. As to the lower standard of "during and in relation to," Congress consciously intended "to leave undisturbed the body of case law which has interpreted [that] phrase." *Id.* at 12.

The discussions on the floor of Congress likewise demonstrate that Congress wished to distinguish the two prongs of the statute. The proponent of the Senate bill, Senator Dewine, explained:

> The purpose of adding the "in furtherance" language is to assure that someone who possesses a gun that has nothing to do with the crime does not fall under 924(c). I believe that the "in furtherance" language is a slightly higher standard that encompasses "during and in relation to" language, by requiring an indication of helping forward, promote, or advance a crime.

144 Cong.Rec. S12671 (daily ed. Oct. 16, 1998) (statement of Sen. DeWine). In the House of Representatives, Rep. McCollum stated, "It is also important to note that this bill will not affect any person who merely possesses a firearm in the general vicinity of a crime, nor will it impact someone who uses a gun in self-defense." 140 Cong.Rec. H10330 (Oct. 9, 1998). *See generally* 144 Cong.Rec. H530–35 (daily ed. Feb. 24, 1998) (possession must be shown to be in furtherance of the predicate crime, therefore the statute would not cover someone that merely possesses a firearm in the general vicinity of a crime or someone who might use a gun in self-defense).

From this history, one discerns that Congress deliberately intended to set forth the separate offense of possession, one that was not included in the original statute according to the Supreme Court's definition in *Bailey.* By adding possession as a proscribed act, and by requiring a higher standard of involvement to connect possession with the predicate crime (in furtherance of the crime), Congress created a new offense within the same statute. Tellingly, Congress rejected those amendments that merely added possession to the list of prohibited actions. Had those versions been adopted, the insistence of the United States here that the statute only creates alternate means of committing a single offense might be more persuasive. As is, Congress' deliberate actions in perspective of the decision in *Bailey* show that Congress intended to create a separate offense for possession of a firearm in furtherance of a crime of violence or drug trafficking crime.

### 3. Proof Necessary To Support Each Offense Or Means

"[I]t is well settled that the test for determining whether several offenses are involved is whether identical evidence will support each of them, and if any dissimilar facts must be proved, there is more than one offense." *United States v. Holley,* 942 F.2d 916, 928 (5th Cir.1991) (quoting *Bins v. United States,* 331 F.2d 390, 393 (5th Cir.), *cert. denied* 510 U.S. 821, 114 S.Ct. 77, 126 L.Ed.2d 45 (1993)). *See also* 1 Wright, *Federal Practice and Procedure,* § 142 (same).

The United States argues that *United States v. Hawkes,* 753 F.2d 355 (4th Cir. 1985) controls the outcome of this case. In *Hawkes,* the Fourth Circuit held that an indictment charging Hawkes with manufacture *and* possession with intent to distribute did not run afoul of the rule against duplicity, even though the statute stated the prohibited acts in the disjunctive. *See* 21 U.S.C. § 841. Specifically, the Court of Appeals concluded that " 'to join possession and distribution [or in this case manufacture and possession] in one count *may* not be duplicitous.' " *See id.* at 357 (internal citations omitted and emphasis added). Recognizing that this conclusion could be seen as contrary to Fourth Circuit precedent, the Court of Appeals explained that:

> [T]his court has also remarked that where separate evidence is required to prove two charges arising from the same factual situation such charges "are separate offenses, require different proof, and may support separate verdicts." *United States v. Welebir,* 498 F.2d 346, 352 (4th Cir.1974). In *Welebir,* however, there was separate evidence available to prove the charges of possession and manufacture. In this case, the cultivation itself necessarily constituted the possession and manufacture of the marijuana—there was no separate evidence offered to prove each charge. In other words, a single act was not proof of the two offenses in *Welebir,* whereas in this case ... the same act proved the separate charges. As a consequence, the indictment in this case was not duplicitous.

*Id.* The conclusion in *Hawkes* is inextricably linked to the facts of that case. Far from announcing that disjunctive statutes are likely alternative means statutes (as the United States argues), *Hawkes* demonstrates that the inquiry focuses on the facts necessary to support a conviction. *Cf. United States v. Bailey,* 112 F.3d 758, 767 (4th Cir.1997) *cert. denied* 522 U.S. 896, 118 S.Ct. 240, 139 L.Ed.2d 170 (1997) ("It is well-established that two statutes, although punishing the same transaction, are not multiplicitous where each requires proof of an additional fact which the other does not require").

■ Here, it is beyond serious question that, under the plain meaning of the words, different evidence is required to prove that Pleasant used or carried the firearm during and in relation to the predicate crime, than is required to prove that he possessed the firearm in furtherance of such crime. The Supreme Court's holding in *Bailey* makes clear, even if the word meaning does not, that the same evidence will not support a conviction for use/carry and possession. Furthermore, the legislative history of the post-*Bailey* amendment confirms that the United States must show a higher degree of relationship to the predicate crime if the firearm is merely possessed than is necessary to prove if the weapon is used or carried during and in relation to the predicate crime. This higher standard will necessarily involve a different showing of proof. That is because possession of the gun must somehow further or advance the crime of violence, a circumstance not necessary to show that the gun was used or carried "during and in relation to" the crime of violence.

### 4. Nature Of The Proscribed Conduct

Much of the argument of the United States is based on the assertion that Rule 7(c) of the Federal Rules of Criminal Procedure allows an indictment to allege in a single count "that the defendant committed [the offense] by one or more specified means." *See also Hawkes,* 753 F.2d at 357. That, of course, is true, but it is not dispositive because of the need to ask: "What is the offense for which alternative means are provided?"

The United States asserts that the offense is the employment of a weapon in connection with specified crimes. That offense, however, is not identified as proscribed conduct in § 924(c)(1)(A) as amended in 1998 after *Bailey.* What the

statute proscribes as conduct in the first clause is the use or carrying of a gun during (a temporal connection) and in relation to (a substantive connection) a predicate crime. What the statute proscribes in the second clause is possessing a gun in furtherance of (with a particular purpose of advancing) the specified crime. Thus, the nature of the proscribed conduct marks the post-*Bailey* statute not as an alternative means enactment, but as a statute that proscribes (and punishes) two separate offenses.

For the foregoing reasons, to charge both parts of § 924(c) in a single count is duplicitous.[7] Thus, Counts Two and Four must be dismissed.[8]

### III. The Indictment Is Legally Insufficient

Even assuming that the United States is correct in its contention that § 924(c) merely sets forth alternative means of committing a single offense, Counts Two and Four must be dismissed for the reason that each count is an almagam of the so-called alternative means and thus charges an offense not identified in the statute.

It is a "long-established rule of the criminal law that an indictment need not specify which overt act, among several named, was the means by which a crime was committed." *Schad*, 501 U.S. at 631, 111 S.Ct. 2491. Nonetheless, the elements of the offenses charged must be set forth in the indictment. *See Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). "Once it is ·determined that the statute defines but a single offense, it becomes proper to charge the different means, denounced disjunctively in the statute, conjunctively in each count

of the indictment." *UCO Oil*, 546 F.2d at 838.

Although the Indictment in this case asserts charges in the conjunctive, it does so by commingling the modifiers and the verbs, thus collapsing the two parts of the statute into one jumbled mess. If, as the United States contends, § 924(c) is an alternative means statute, a properly drafted indictment would charge Pleasant with "using and carrying a firearm during and in relation to a crime of violence and possession of a firearm in furtherance of a crime of violence." Instead, the garbled indictment conflates the two by charging that Pleasant "during, in relation to, and in furtherance of a crime of violence, did knowingly and unlawfully carry and possess a firearm." There is no such crime in § 924(c)(1)(A), or otherwise.

The inadequacy of an indictment may be raised at any time during the proceedings; however, a pre-verdict challenge to the sufficiency of the indictment receives stricter scrutiny than does a post-verdict challenge. *See United States v. Darby*, 37 F.3d 1059, 1062–63 (4th Cir. 1994) (in reviewing the sufficiency of the indictment, the court applies a heightened standard of scrutiny when the challenge is made prior to the verdict), *cert. denied* 514 U.S. 1097, 115 S.Ct. 1826, 131 L.Ed.2d 747 (1995); *United States v. Sutton*, 961 F.2d 476, 478–79 (4th Cir.1992) (same), *cert. denied*, 506 U.S. 858, 113 S.Ct. 171, 121 L.Ed.2d 118, (1992); *United States v. Vogt*, 910 F.2d 1184, 1200–01 (4th Cir.1990) (same), *cert. denied* 498 U.S. 1083, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991). "To meet the demands of the Fifth and Sixth Amendments, an indictment must (1) contain the elements of the charged offense and fairly inform a defendant of the

---

7. Additionally, charging Pleasant in separate counts would not make the indictment multiplicitous. If a defendant were convicted of both crimes, one conviction would be dismissed under *United States v. Dunford*, 148 F.3d 385 (4th Cir.1998).

8. Because the issue is resolved by concluding that the statute creates separate offenses, it is unnecessary to engage in the constitutional analysis announced by *Schad*, 501 U.S. 624, 111 S.Ct. 2491, and *Edmonds*, 80 F.3d 810, to determine whether the legislature may create alternative means to commit a single offense without running afoul of due process.

charges against him, and (2) enable him to plead double jeopardy in defense of future prosecutions for the same offense." *Sutton*, 961 F.2d at 479 (citing *Hamling*, 418 U.S. at 117, 94 S.Ct. 2887). *See also United States v. Roberts*, 296 F.2d 198, 200 (4th Cir.1961) ("The primary offices of an indictment are to inform the defendant of the offense with which he is charged with sufficient clarity to enable him to prepare his own defense, and to permit him to plead a former conviction or acquittal in bar to a subsequent indictment for the same offense"), *cert. denied* 369 U.S. 867, 82 S.Ct. 1033, 8 L.Ed.2d 85 (1962).

The problem presented by Counts Two and Four is not so much the failure to plead an essential element as it is the failure to *properly* plead the essential elements. This error warrants dismissal of the counts because the indictment does not "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[se] intended to be punished." *Hamling*, 418 U.S. at 117, 94 S.Ct. 2887. From the face of the Indictment, neither Pleasant nor the court can determine precisely how he is alleged to have violated § 924(c).

The United States argues that the commingling of the elements actually operates to its detriment because it is required to prove the heightened relationship standard for either act, carriage or possession of the firearm, in furtherance of a crime of violence. Under this theory, any reference to the "during and in relation to" language would be mere surplusage and could be stricken.[9]

▮ To grant the request to strike the so-called surplusage would require the court to identify the offense which the grand jury intended to charge and delete the rest of the text of the indictment. Thus, the court would in essence rewrite the indictment. The Sixth Amendment restricts the United States from altering indictments of its own volition. *See United States v. Wylie*, 919 F.2d 969, 973 (5th Cir.1990). The courts are not free to do so either. Furthermore, the striking of the "during and in relation to" language may also violate the Grand Jury Clause of the Fifth Amendment. *See United States v. Downer*, 143 F.3d 819, 822–23 (4th Cir. 1998) (holding that court's choice to proceed under an ex post facto statute resulted in an impermissible amendment of the indictment in contravention of the Grand Jury Clause).

The evolution of Fourth Circuit decisional law in this area demonstrates the danger of the proposition advanced by the United States here. In *Moore v. U.S.*, 512 F.2d 1255, 1256 (4th Cir.1975), the indictment charged Moore with possession of a sawed-off 12–gauge shotgun, in violation of 26 U.S.C. § 5845(d), but the evidence at trial proved that he possessed a flare gun

---

**9.** Pursuant to Fed.R.Crim.P. 7(d), "The court *on motion of the defendant* may strike surplusage from the indictment or information." (emphasis added). A motion to strike surplusage should be granted only if it is clear that the surplusage is (1) not relevant to the charges; (2) inflammatory; and (3) prejudicial. *See* 1 Wright, *Federal Practice and Procedure* § 127.

As a preliminary matter, the rule conspicuously limits the court's power to strike to those cases where the *defendant* seeks the removal of the surplusage. *See United States v. Wylie*, 919 F.2d 969, 973 (5th Cir.1990) ("The government cannot utilize the surplusage procedure of rule 7(d) to remove from the indictment any matters that it plans to prove through evidence at trial.")

Yet courts routinely find portions of an indictment to be surplusage regardless of whether the defendant, the United States or the court raises the issue. *See Bargas v. Burns*, 179 F.3d 1207, 1216 n. 6 (9th Cir. 1999) ("[w]e have repeatedly held that language that describes elements beyond what is required under statute is surplusage and need not be proved at trial"), *cert. denied* 529 U.S. 1073, 120 S.Ct. 1686, 146 L.Ed.2d 493 (2000); *United States v. Wells*, 127 F.3d 739, 743 (8th Cir.1997) ("When an indictment includes all of the essential elements of an offense, but also treats other, superfluous matters, the superfluous allegations may be disregarded and the indictment is proper").

that was modified to fire 12–gauge shells, in violation of 26 U.S.C. § 5845(e). The jury was charged under § 5845(e). The Fourth Circuit held that the error in the indictment was surplusage and thus affirmed the conviction. *See id.* Similarly, in *United States v. Bledsoe,* 898 F.2d 430 (4th Cir.1990), *cert. denied,* 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990), the defendant was indicted for distributing drugs within 1000 feet of a "public school." *See id.* 431. The statute made it a crime to sell drugs within such limits of either a public or private school. *See id.* at 432. Discovering that the United States could not prove that Bledsoe had sold cocaine within 1000 feet of public school because he had actually sold the drug within 1000 feet of a private parochial school, the district court struck the word "public" from the indictment. *See id.* at 431. The Fourth Circuit affirmed the conviction, holding that the word "public" was merely surplusage because both public and private schools fell within the statute. *See id.* at 433.

However, in *United States v. Floresca,* 38 F.3d 706, 710 (4th Cir.1994), the Fourth Circuit, sitting en banc, changed course and held that changes of that sort constituted a constructive amendment to the indictment. In *Floresca,* the Court of Appeals faced a situation indistinguishable to that presented in *Moore,* in that the indictment charged the defendant with one subsection of statute, yet the district court instructed the jury on an entirely different subsection. *See id.* at 710–11. The court explicitly overruled *Moore* and limited *Bledsoe* to its facts. *See id.* at 711.

According to the Court of Appeals, the district court's misinstruction in *Floresca* resulted in an amendment to the indictment. *Id.* at 710. The error created a broadening of the bases for Floresca's conviction. *Id.* at 711 (stressing that it is the broadening itself that is important, not

that a rational factfinder could have found guilt on either crime).

The proposal made by the United States in this case seeks to accomplish exactly what *Floresca* prohibits, a constructive amendment of the indictment. Surely, if the Fourth Circuit expressed concern for the striking of "public" from the indictment in *Bledsoe,* the far more extensive editing proposed by the United States here would raise equally grave concerns.

The United States next contends that any confusion caused by the garbled indictment can be cured by a jury instruction. That approach likewise would require the Court to rewrite the indictment or permit the United States to do so and hence is not a viable solution.

Lastly, Pleasant adds that Counts Two and Four are also multiplicitous. For example, explains Pleasant, "the United States may be charging and prosecuting the defendant for two violations of § 924(c) which refer to possession of the weapon, at the same time, [and] during the same activity." This deficiency arises not from the language of the statute, but from the drafting of the indictment itself. Counts Two and Four are identical in that they charge Pleasant with carrying a possessing a firearm during, in relation to and in furtherance of a crime of violence on January 24, 2000. If Pleasant was charged with only a single crime of violence on that day, then perhaps he would be on notice as to the predicate crime. Yet the indictment alleges two crimes of violence: a robbery of a jewelry store on or about January 24, 2000 (Count 1), and a robbery of a drugstore on or about January 24, 2000 (Count 2).[10] The Defendant, therefore, has no notice of which crime in connection with he is charged as having carried or possessed a firearm. The court need not decide the multiplicity issue, however, in light of the

---

**10.** The Superseding Indictment resolves this deficiency by connecting the § 924(c) charges

to the crimes of violence by count number.

duplicity, and the consequent legal insufficiency, of Counts Two and Four.

Nonetheless, an admonition, twice uttered by the Fourth Circuit before, deserves repetition here: Draft the indictment with the statute before you. *See Roberts,* 296 F.2d at 202; *United States v. Hooker,* 841 F.2d 1225, 1232–33 (4th Cir. 1988).

### CONCLUSION

For the foregoing reasons, Counts Two and Four of the Superseding Indictment are dismissed without prejudice.

The Clerk is directed to send a copy of the foregoing Memorandum Opinion to all counsel of record.

It is so ORDERED.